## THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

SHORELIGHT, LLC
Two Seaport Lane, Suite 500
Boston, MA 02210

       *Plaintiff,*

UNITED STATES
DEPARTMENT OF STATE
2201 C St. NW
Washington, D.C. 20520

       *Defendant.*

Case No.

**Complaint for Injunctive Relief Under the Freedom of Information Act**

## <u>COMPLAINT FOR INJUNCTIVE RELIEF</u>

1.      Plaintiff Shorelight, LLC ("Shorelight") brings this action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), against Defendant, U.S. Department of State ("DOS or "State Department") to compel Defendant to produce documents and data in compliance with FOIA.

2.      On February 12, 2025, Plaintiff submitted an Expedited FOIA request (FOIA Case Number F-2025-09970) to DOS requesting statistics that were designed to assist universities to determine the State Department's performance in providing an interview to every international student who was seeking an interview in order to obtain a student visa to study in the United States. *See* **Exhibit A**.

3.      Specifically, Plaintiff requested the following information:

a.      "For fiscal years 2022, 2023, and 2024 — The total number of completed/submitted DS-160 applications seeking F-1 student visas by country.   In other words, we are not seeking to know the number of students who started an application,        but  we are seeking to know the number of students who actually         submitted/completed  a DS 160 application to the State Department.

b.      For fiscal years 2022, 2023, and 2024 — The total number F-1 student visa applicants who made F-1 student visa application fee payments to the State Department (not in dollar amount – but meaning the number of people/applicants who paid visa application fees).   The data sought should be provided by country.  In other words, we want to know how many Chinese F-1 student visa applicants paid a fee, how many Indian F-1 student visa applicants paid a fee, etc.

c.      For fiscal years 2022, 2023, and 2024 — For each country, the total number of completed/submitted DS-160 applications seeking F-1 student visas by country – but sorted by the "Name of School" field that is in the DS-160 application.   In other words, if India has 50,000 applicants, we seek to know how many of the 50,000 applicants were seeking to attend University X, how many were seeking to attend University Y, and how many were seeking to attend University Z, etc.   The State Department maintains these statistics due to its use of this field on the DS-160."

*See* **Exhibit A**, FOIA Request to State Department (dated February 12, 2025).

4.      On March 5, 2025, the State Department denied Plaintiff's request for expedited processing, declaring, without explanation, that Plaintiff's request failed to "demonstrate a 'compelling need' for the requested information." *See* **Exhibit B**, Ref: F-2025-09970, Freedom of Information Act Acknowledgement and Response from State Department (dated March 5, 2025). In its response, the State Department informed Plaintiff that the FOIA request had been placed in the "complex processing track" and that the Department would not be able to respond within the 20 days mandated by statute due to "unusual circumstances," which "include the need to search for and collect requested records from other Department offices or Foreign Service posts." *Id* (citing 5 U.S.C. § 552(a)(6)(B)(i)-(iii)).

5.      On March 17, 2025, Plaintiff submitted a FOIA Appeal of the State Department's denial of their Request for Expeditious Handling. *See* **Exhibit C,** FOIA Appeal to State Department (dated March 17, 2025).   In this FOIA Appeal, Plaintiff provided a detailed explanation of the compelling needs which in fact justify the expeditious processing of Plaintiff's FOIA request and also noting that despite the Department's claim, all of the information is clearly and readily available to the State Department as it already collects this information in segregated field form and that Consular Officers receive reports with the exact information requested by Plaintiff. *Id.*

6.      Prior to July 22, 2025, the State Department had not responded to Plaintiff's Appeal despite the controlling statutes and regulations, which require the FOIA Appeals Officer to "issue a final written determination, stating the basis for the decision, within twenty (20) working days after receipt of a notice of appeal." *See* 25 C.F.R. §517.8(c); 5 U.S.C. §552(a)(6)(A)(ii). Accordingly, Plaintiff's appeal was constructively denied as of April 14, 2025, due to the State Department's failure to respond to the Appeal. *See* 5 U.S.C. § 552(a)(6)(A)(i).

7.    Even though the State Department subsequently sent an email titled "Acknowledgement of appeal for FOIA case F-2025-09970" on July 22, 2025 stating that the "Department of State has received your letter dated March 17, 2025, appealing Freedom of Information Act Case No. F-2025-09970.  Your appeal has been assigned tracking number A-2025-00108, please use this number in further correspondence," this late acknowledgement of Plaintiff's March 17, 2025 appeal does not make the State Department's processing timely, and, thus, this lawsuit remains viable.  *See* **Exhibit D.**

8.    Moreover, over two months have now passed since receipt of this email regarding the appeal and no further information has been provided by the State Department.

9.    To date, Plaintiff's FOIA appeal request regarding case numbers F-2025-09970/ A-2025-00108 remains pending.

10.    In addition, on August 4, 2025, Plaintiff also requested information regarding student visa approval rates per country for Fiscal Year 2024 and 2025. *See* F-2025-24419. **See Exhibit E**.   This information has previously been provided for prior years by the State Department. ***See*** **Exhibit F**.  This updated information is also requested as part of this lawsuit.

11.    On August 27, 2025, the State Department stated that it would not be able to respond within the 20 days provided by the statute. **Exhibit G**.

12.    On September 11, 2025, Plaintiff submitted a FOIA Appeal of the State Department's denial of their Request for Expeditious Handling. *See* **Exhibit H,** FOIA Appeal to State Department (dated September 11, 2025). In this FOIA Appeal, Plaintiff provided a detailed explanation of the compelling needs which in fact justify the expeditious processing of Plaintiff's FOIA request and also noting that despite the Department's claim, all of the information is clearly and readily available to the State Department as it has already provided this information in the

past. *Id.*

13.     The State Department indicated that "the Department of State has received your letter dated September 11, 2025, appealing Freedom of Information Act Case No. F-2025-24419.  Your appeal has been assigned tracking number A-2025-00467, please use this number in further correspondence." *See* **Exhibit I.**

14.     To date, Plaintiff's FOIA appeal request regarding Case Numbers: F-2025-24419/A-2025-00467 remains pending.

15.     The totality of the information requested regards topics of significant public importance that have raised substantial questions about whether the United States is refusing to provide appointments to—and refusing to provide visa approvals to—a significantly higher percentage of student visa applications in certain countries than in past years. *See*, e.g., Business Today, *US student visa: F-1 visa denials surged to 10-year high last fiscal, states report* (March 24, 2025 (*available at* https://www.businesstoday.in/nri/visa/story/us-student-visa-f-1-visa-denials-surged-to-10-year-high-last-fiscal-states-report-469053-2025-03-24) (last visited June 9, 2025); The Indian Express, *F-1 visa denials surge to 10-year high, US rejects 41% of foreign student applicants* (March 25, 2025) (*available at* https://indianexpress.com/article/india/f-1-visa-denials-surge-to-10-year-high-us-rejects-41-per-cent-of-foreign-student-applicants-9902283/#:~:text=F1%20Student%20Visa%20Rejection%20in,shows%20an%20analysis%20of%20State) (last visited June 9, 2025).

16.     Additionally, access to this requested information increases Shorelight's ability to accurately advise universities, students, and other interested stakeholders on the likelihood of international student visa outcomes—outcomes that have a far-reaching impact on many more individuals and entities than just the individual F-1 student. The Brookings Institution explained:

> The Trump administration had instilled a significant degree of unpredictability for international students and their schools . . . lower interest from international students during the Trump administration raised concerns for schools and employers in the U.S., as the decline of international student enrollment cost the United States nearly $12 billion and over 65,000 jobs since 2016, in addition to losing out on other benefits of having international students in U.S. schools.

Dan Berger, *et al. Report: [Four] Ways the Biden Administration Can Improve the Employment-Based Immigration System Without Congress*, Brookings.edu (Jan. 28, 2021) *available at* https://www.brookings.edu/research/4-ways-the-biden-administration-can-improve-the-employment-based-immigration-system-without-congress/ (last visited June 9, 2025). In addition, the Brookings Institute also recently detailed the economic importance of international students to the U.S. economy:

> "international students in the higher education sector supported almost 400,000 jobs in the 2023-24 school year. … Looking ahead, market trends in the higher education business are quite clear—and international students can clearly make a difference. College attendance by Americans is at an all-time high but is expected to decline sharply over the next 15 years, in large part because there are simply fewer children in the United States. That means there will be many open spaces available in U.S. institutions to be filled by international students. If we lose international students while domestic enrollments are also falling, many colleges will have to shrink or, in some cases, shut down."

Dick Startz, *International college students matter for the economy,* Brookings.edu (May 30, 2025) *available at* https://www.brookings.edu/articles/international-college-students-matter-for-the-economy/ (last visited June 9, 2025).

17. Ensuring this information be made publicly available and easily accessible is a priority for the Trump Administration. In recent guidance, the Department of Justice updated its Guide to the Freedom of Information Act –a comprehensive legal treatise on the FOIA—

emphasizing the following regarding Proactive Disclosures:

> "Subsection (a)(2) of the FOIA **requires federal agencies to 'make available for public inspection in electronic format'** four specific categories of records [including] … records which have been released in response to a request and 'that because of the nature of their subject matter, the agency determines have become, or are likely to become, the subject of subsequent requests for substantially the same records; or . . . that have been requested 3 or more times.' … **Proactive disclosure of the …** "**frequently requested**" **records category – serves the more pragmatic purpose of 'reduc[ing] the number of multiple FOIA requests for the same records requiring separate agency responses,' by making previously-released records on popular topics available for public inspection**."

*See e.g.* U.S. Department of Justice Guide to the Freedom of Information Act, *Proactive Disclosures* (March 14, 2025), https://www.justice.gov/oip/foia-guide/proactive_disclosures/dl?inline (last visited June 9, 2025).

18.     Further, the National Origin-Based Antidiscrimination for Nonimmigrants Act ("NO BAN Act"), which was introduced in the U.S. House of Representatives on August 2, 2024, also evidences this priority. If enacted, the NO BAN Act would mandate the U.S. Secretary of State formally report the number of foreign applicants whose U.S. visas were approved, are still pending, or were denied, per reporting period. *See* National Origin-Based Antidiscrimination for Nonimmigrants Act, NO BAN Act, H.R. 9244, 118th Cong. § 2 (2024), *available at* https://www.congress.gov/118/bills/hr9244/BILLS-118hr9244ih.pdf (no action taken in the House as of June 10, 2025). The bill also proscribes that this data be further broken down by visa category and applicant country of origin. *Id*.

19.     Although critical for the nation's future, its enactment is tenuous at this stage. Therefore, time is of the essence for Shorelight, as schools across the country need to prepare for the 2026 academic year, for which the academic application and admission process (and the

student visa appointments process) is nearly complete at the vast majority of U.S. colleges and universities. *See, e.g.*, Intelligence Unit, *2024 Global Student Flows – US Outlook and Forecast Update*, Holon IQ, (May 23, 2024), https://www.holoniq.com/notes/2024-global-student-flows---us-outlook-and-forecast-update (last visited June 9, 2025)  (the article's conclusion underscores Plaintiff's argument: "the U.S. has upside potential for an additional 300K students [by 2030]. However, capacity constraints and the potential for a change in visa policy, cast a shadow over what should represent nearly **100 billion dollars in direct economic benefit for the United States** at the turn of the decade.").

20.     Finally, universities across the United States require this information quickly so that they may better understand the changing landscape of the international student visa adjudication process and to make multi-million dollar decisions about which international students to invest-in and recruit from around the world. This data is critical to preventing schools from wasting millions of dollars to recruit students from areas where they are statistically less likely to obtain visas. *See* e.g., Samba Dieng, *Student Visa Denials Threaten U.S. Competitiveness*, InsideHigherEd.com (May 20, 2024) *available at*   https://www.insidehighered.com/opinion/views/2024/05/20/states-have-compelling-interest-visa-policy-opinion (last visited August 26, 2024); *see also,* Sanjay Sharma, *Red Flags for US higher education: SEVIS data shows decline in international student enrollments,* The Times of India (May 29, 2025) *available at*  https://timesofindia.indiatimes.com/education/news/red-flags-for-us-higher-education-sevis-data-shows-decline-in-international-student-enrolments/articleshow/121493379.cms (last visited June 3, 2025) ("Recent analysis of data from the Student and Exchange Visitor Information System (SEVIS) has raised alarm bells regarding international student enrolments in the US for the 2024/25 academic year. **According to the data, enrolments have dropped by 11% from March 2024 to March 2025, resulting in a loss of**

**approximately $4 billion in economic impact**. … Experts suggest that the decline can be attributed to a combination of rising visa refusal rates, changing international student preferences, and evolving political conditions under the US administration.").

21.    Plaintiff's FOIA requests F-2025-09970/A-2025-00108 and F-2025-24419/A-2025-00467 are entitled to expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E)(i)(I). *See also* 22 C.F.R. § 171.11(f)(2) and (3).

22.    DOS has unlawfully withheld this information from Shorelight despite its right to expedited processing of FOIA requests F-2025-09970/A-2025-00108 and F-2025-24419/A-2025-00467. *See* **Exhibits A – I.**  Plaintiff therefore respectfully requests that the Court compel the U.S. Department of State to fulfill its statutory duty and process its FOIA requests seeking non-immigrant F-1 Nonimmigrant Visa Statistics for Fiscal Years 2022 through 2025 on an expedited basis.  Indeed, these statistics are already in DOS's possession and are readily available to be released with very little effort or resource expenditure on the part of the U.S. Department of State.

## JURISDICTION AND VENUE

23.    This Court has jurisdiction over this action pursuant to the FOIA statute, 5 U.S.C. § 552(a)(4)(B) ("[o]n complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant[]") and the federal question jurisdiction statute, 28 U.S.C. § 1331.

24.    Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because this is a civil action in which Defendant is a federal agency. *See* supra ¶ 9.

## PARTIES

25.     Plaintiff Shorelight, LLC is a limited liability corporation incorporated under the laws of Delaware and based in Boston, Massachusetts.  Shorelight exclusively partners with universities that place a high value on reaching out to top students across the globe and growing their international student body. *See* Shorelight Home Page, *https://shorelight.com/universities/* (last visited June 3, 2022); *see also* Jim Morrison, *5 Minutes With . . . Tom Dretler of Shorelight*, Boston        Business        Journal        (Aug.        20,        2020),        *available        at* https://www.bizjournals.com/boston/news/2020/08/20/5-minutes-with-tom-dretler-of-shorelight.html.  Shorelight currently works with 111 U.S. universities—such as: Adelphi University, The American Musical and Dramatic Academy, American University, Auburn University, Auburn University at Montgomery, Austin College, Barton College, Belmont University, Bethel College, Blackburn College, Carroll University, Cleveland State University, Gonzaga University, Florida International University, Louisiana State University, University of South Carolina, University of Massachusetts at Boston, University of Massachusetts Amherst, University of Central Florida, University of Dayton, University of Illinois at Chicago, University of Kansas, University of Mississippi, University of the Pacific, University of Utah, University of California – Berkley, American Collegiate LA (UCLA's continuing education/extension school), American Collegiate DC (American University's continuing education/extension school), American Collegiate Live (Shorelight's remote learning institution designed for international students), and University of California at Berkeley—to provide innovative options for foreign students seeking next generation higher education. *See* Shorelight "Partner Universities" Page, https://shorelight.com/universities/ (last visited on June 9, 2025).

26.    Shorelight provides an array of services to its partner universities, including: designing, implementing, and managing international student programs on site of the university's home campus and at venues around the world; face-to-face student concierge services (including admissions application assistance, dormitory room set up, personalized campus and community orientation for the student and his or her family, and visa application and interview guidance); enrollment management expertise; localized marketing; and—most importantly for this case— regulatory information guidance. *See* Shorelight's "Services" Webpages for Students and Universities, shorelight.com (last visited June 9, 2025).

27.    A significant aspect of Shorelight's business operations includes its ability to keep its universities, students, and other stakeholders apprised of the latest, ever-changing immigration-related federal regulations by disseminating this information. Therefore, having access to more specific student visa approval/denial statistics is critical in order for Shorelight to inform members of Congress, the media, the universities with which it works, potential future university collaborators, prospective students, and the general public about government policies and practices affecting international students and U.S. universities.

28.    Moreover, Shorelight has a substantial due process interest in obtaining this data. Shorelight and its associated universities need to understand the changing landscape of the international student visa adjudication process in order to make multi-million dollar decisions about which international students to invest in and recruit from around the world.  This data is critical to preventing public schools funded by taxpayer dollars from wasting millions of dollars in the recruitment of students from areas where they are unlikely to obtain visas.

29.     Defendant, the U.S. Department of State, is a federal agency within the meaning of FOIA (*see* 5 U.S.C. § 552(f)(1)) and headquartered in Washington, D.C. Defendant has possession, custody, and control of the records and data to which Plaintiff seeks access.

## STATEMENT OF FACTS

30.     Generally, a citizen of a foreign country who wishes to enter the United States to study must first obtain a student visa in order to legally study in the United States.  A student seeking to study at a college, university, or a language training program must obtain what is known as an "F-1" visa, which is named after the section of the Immigration and Nationality Act authorizing the issuance of student visas.  *See* 8 U.S.C. § 1101(a)(15)(F)(i).

31.     In order for a foreign student to obtain a visa to study in the United States, they must apply to, and be accepted by, a school approved by the U.S. Department of Homeland Security to accept foreign students. After the DHS-approved school accepts the student's enrollment, the school issues the student a Form I-20, Certificate of Eligibility for Nonimmigrant Student Status. *See Student Visa Overview*, U.S. Dep't of State Bureau of Consular Affairs, Travel.State.Gov, *available at* https://travel.state.gov/content/travel/en/us-visas/study/student-visa.html (last visited June 6, 2025); *see also Students and the Form I-20*, U.S. Dep't of Homeland Security, Study in the States, *available at* https://studyinthestates.dhs.gov/students/prepare/students-and-the-form-i-20 (last visited June 8, 2025).

32.     After the student receives a Form I-20, the student may then apply at a U.S. Embassy or Consulate for an F-1 student visa. In order to apply for the visa, the student will complete and submit Online Nonimmigrant Visa Application, Form DS-160, which is completed online and then brought to the visa interview at a U.S. Embassy or Consulate. *See Student Visa*

*Overview*, U.S. Dep't of State Bureau of Consular Affairs, Travel.State.Gov, *available at* https://travel.state.gov/content/travel/en/us-visas/study/student-visa.html (last visited June 6, 2025). At the visa interview, a consular officer interviews the student to determine whether the student should be granted a visa to study in the United States.

33.     In 2019, the U.S. Department of State changed its methodology for calculating its non-immigrant visa data beginning in the Fiscal Year (FY) 2019 annual Report of the Visa Office and continuing with FY 2020 data, to reflect the greater access to application-level data attained during FY 2019. Per the U.S. Department of State's Bureau of Consular Affairs, this new methodology more accurately reflects final outcomes from the visa application process during a specified reporting period.  The new methodology follows visa applications, including updates to their status (i.e., issued or refused), which could change as the fiscal year progresses, or result in slight changes in data for earlier years. *See Visa Data Reporting: Updating the Methodology*, available                                                                                                                        at https://travel.state.gov/content/dam/visas/Statistics/AnnualReports/FY2019AnnualReport/Visa_c ounts_methods_differences_vF.pdf (last visited June 6, 2024); *see also Monthly Nonimmigrant Visa Issuance Statistics*, U.S. Dep't of State Bureau of Consular Affairs, Travel.State.Gov, *available          at*          https://travel.state.gov/content/travel/en/legal/visa-law0/visa-statistics/nonimmigrant-visa-statistics/monthly-nonimmigrant-visa-issuances.html  (last  visited June 6, 2024).

34.     The  U.S. Department of State already reports, on a monthly basis, the sum-total number of F-1 student visas "issued" by post and nationality as a result of these interviews.  *See* Report of the Visa Office, *Monthly Nonimmigrant Visa Issuances Statistics*, U.S. Dep't of State Bureau          of          Consular          Affairs,          Travel.State.Gov,          *available          at*

https://travel.state.gov/content/travel/en/legal/visa-law0/visa-statistics/nonimmigrant-visa-statistics/monthly-nonimmigrant-visa-issuances.html (last visited June 6, 2025).

35.    The U.S. Department of State also reports on the Nonimmigrant Visa Issuances, including the number of F-1 student visas **issued**, by **post** and **nationality**. *See* Nonimmigrant Visa Issuances by Nationality April 2025 (FY 2025) U.S. Department of State, Travel.State.Gov, *available at* https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/MonthlyNIVIssuances/APRIL%202025%20-%20NIV%20Issuances%20by%20Nationality%20and%20Visa%20Class.pdf (last visited June 6, 2025); *see also* Nonimmigrant Visa Issuances by Post April 2025 (FY 2025), U.S. Department of State, Travel.State.Gov, *available at* https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/MonthlyNIVIssuances/APRIL%202025%20-%20NIV%20Issuances%20by%20Post%20and%20Visa%20Class.pdf (last visited June 6, 2025).

36.    In addition, the U.S. Department of State also currently reports the worldwide sum-total number of F-1 student visas "issued" and "refused" annually.  *See* Report of the Visa Office, *Worldwide NIV Workload by Visa Category FY* 2024, U.S. Dep't of State Bureau of Consular Affairs, Travel.State.Gov, *available at* https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/NIVWorkload/FY%202024NIVWorkloadbyVisaCategory.pdf  (last  visited June 6, 2025).

37.     Despite issuing these datasets described above in paragraphs 29 and 30, the State Department does not publicly report the following information that Plaintiff's believe is vitally important for the public to know (and which Defendant collects):

>   a.  The number of students who fill out visa applications, pay a visa fee, and yet are unable to obtain an appointment for a student visa interview;

>   b.  The percentage of students who, once they are able to obtain an appointment, are

denied a visa at their appointment.

38.    That is why, on February 12, 2025, Shorelight requested this data for Fiscal Years 2022 through 2024 (year-to-date). *See* **Exhibit A**, FOIA Request to State Department (dated February 12, 2025).

39.    Shorelight has requested this data because, based on the scope of its global operations and its firsthand knowledge of the student visa adjudication process, Shorelight has reason to believe that many students are currently unable to obtain visa appointments, and that the visa refusal rate for F-1 student visas is significantly increasing in certain countries.

40.    Indeed, in Fiscal Year 2025 alone, international students have faced travel bans, visa interview pauses, increased vetting, terminations of status, and increased fees. *See* https://www.nafsa.org/executive-and-regulatory-actions-trump2admin

41.    Accordingly, the requested data is critical to universities across the U.S. so that they may better understand the changing landscape of the international student visa adjudication process and to make multi-million dollar decisions about which international students to invest-in and recruit from around the world.

42.    Shorelight's request is not a remarkable, onerous, or resource-intensive request for the State Department to fulfill.  Each year, the State Department publicly releases a document titled: "ADJUSTED REFUSAL RATE - B-VISAS ONLY BY NATIONALITY," which provides the exact same non-immigrant visa refusal rate for *visitor's visas* by nationality.  *See Adjusted Refusal Rate - B-Visas Only By Nationality, Fiscal Year 2024*, U.S. Dep't of State, Travel.State.Gov, *available at* https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/RefusalRates/FY24.pdf (last visited June 9, 2025).

43.    Collecting and organizing the voluminous statistics for visitor's visas is far more time-consuming and resource-intensive than for student visas. In FY 2024, the State Department

processed approximately *1,224 percent more* visitor visa applications than student visa applications. *See Worldwide NIV Workload by Visa Category FY* 2024, U.S. Dep't of State Bureau of Consular Affairs, Travel.State.Gov, *available at* https://travel.state.gov/content/dam/visas/Statistics/Non-Immigrant-Statistics/NIVWorkload/FY%202024NIVWorkloadbyVisaCategory.pdf (last visited June 9, 2025) (evidencing the State Department processed a total of **8,995,108** B-1/B-2 visa applications and only **679,290** F-1 visa applications in FY 2024).

44.    Further, the fact that the State Department's annual Report of the Visa Office 2024 includes a final Section XIX titled "Immigrant and Nonimmigrant Visa Ineligibilities (by Grounds for Refusal Under the Immigration and Nationality Act)" supports the fact that this data is already collected and organized in a manner ready for public use, as there wouldn't be a report on visa ineligibilities without information on the number of completed DS-160 applications received. *See supra* ¶ 31.

45.    Finally, to be clear, Shorelight is only requesting data that is already in Defendant's immediate possession, and that simply disaggregates the numbers already contained and publicly reported in the "issues" and "refused" columns of the yearly statistics so that those numbers can be publicly available and broken down by number of total applications by nationality or post of applicant, name of school, and course of study.  Shorelight effectively seeks the exact same statistics, in the exact same format, already reported for visitor's visas, but for F-1 student visas instead.  This information is necessarily readily and easily available as there is no way DOS can report the monthly and yearly statistics without also collecting the data on the number of applications by nationality and post. Moreover, U.S. Consulate officials have told Shorelight employees that this data is kept and is available to Consulate officials at each U.S. Embassy and Consulate.

46.     Similarly, as to the visa appointment availability data,  Plaintiff has been told that in meetings with State Department officials that the State Department maintains these statistics due to its use of these fields on the DS-160 visa application form.

*Shorelight's FOIA Request and Expedited Processing Request*

47.     On February 12, 2025, Plaintiff submitted a FOIA request (FOIA Case Number F-2025-09970) to DOS requesting F-1 Nonimmigrant Visa Statistics for Fiscal Year 2022, FY 2023 and for FY 2024.  *See* **Exhibit A**, FOIA Request to State Department (dated February 12, 2025).

48.     On March 5, 2025, the State Department denied Plaintiff's request for expedited processing, declaring, without explanation, that Plaintiff's request failed to "demonstrate a 'compelling need' for the requested information." *See* **Exhibit B**, Ref: F-2025-09970, Freedom of Information Act Acknowledgement and Response from State Department (dated March 5, 2025). In its response, the State Department informed Plaintiff that the FOIA request had been placed in the "complex processing track" and that the Department would not be able to respond within the 20 days mandated by statute due to "unusual circumstances," which "include the need to search for and collect requested records from other Department offices or Foreign Service posts." *Id* (citing 5 U.S.C. § 552(a)(6)(B)(i)-(iii)).

49.     On March 17, 2025, Plaintiff submitted a FOIA Appeal of the State Department's denial of their Request for Expeditious Handling. *See* **Exhibit C,** FOIA Appeal to State Department (dated March 17, 2025). In this FOIA Appeal, Plaintiff provided a detailed explanation of the compelling needs which in fact justify the expeditious processing of Plaintiff's FOIA request and also noting that despite the Department's claim, all of the information is clearly and readily available to the State Department as it already collects this information in segregated field form and that Consular Officers receive reports with the exact information requested by Plaintiff. *Id.*

50.      Prior to July 22, 2025, the State Department had not responded to Plaintiff's Appeal despite the controlling statutes and regulations, which require the FOIA Appeals Officer to "issue a final written determination, stating the basis for the decision, within twenty (20) working days after receipt of a notice of appeal." *See* 25 C.F.R. §517.8(c); 5 U.S.C. §552(a)(6)(A)(ii). Accordingly, Plaintiff's appeal was constructively denied as of April 14, 2025, due to the State Department's failure to respond to the Appeal. *See* 5 U.S.C. § 552(a)(6)(A)(i). *See* **Exhibit D,** Case Status Report for F-2025-09970.

51.      Even though the State Department subsequently sent an email titled "Acknowledgement of appeal for FOIA case F-2025-09970" on July 22, 2025 stating that the "Department of State has received your letter dated March 17, 2025, appealing Freedom of Information Act Case No. F-2025-09970.  Your appeal has been assigned tracking number A-2025-00108, please use this number in further correspondence," this late acknowledgement of Plaintiff's March 17, 2025 appeal does not make the State Department's processing timely, and, thus, this lawsuit remains viable.  *See* **Exhibit D.**

52.      To date, Plaintiff's FOIA appeal request regarding case numbers F-2025-09970/ A-2025-00108 remains pending. *Id.*

53.      In addition, on August 4, 2025, Plaintiff also requested information regarding student visa approval rates per country for Fiscal Year 2024 and 2025. *See* F-2025-24419. **See** **Exhibit E**.  This information has previously been provided for prior years by the State Department. **See** **Exhibit F**.  This updated information is also requested as part of this lawsuit.

54.      On August 27, 2025, the State Department stated that it would not be able to respond within the 20 days provided by the statute. **Exhibit G**.

55.    On September 11, 2025, Plaintiff submitted a FOIA Appeal of the State Department's denial of their Request for Expeditious Handling. *See* **Exhibit H,** FOIA Appeal to State Department (dated September 11, 2025). In this FOIA Appeal, Plaintiff provided a detailed explanation of the compelling needs which in fact justify the expeditious processing of Plaintiff's FOIA request and also noting that despite the Department's claim, all of the information is clearly and readily available to the State Department as it has already provided this information in the past. *Id.*

56.    The State Department indicated that "the Department of State has received your letter dated September 11, 2025, appealing Freedom of Information Act Case No. F-2025-24419.  Your appeal has been assigned tracking number A-2025-00467, please use this number in further correspondence." *See* **Exhibit I.**

57.    To date, Plaintiff's FOIA appeal request regarding Case Numbers: F-2025-24419/A-2025-00467 remains pending. *Id.*

*Entitlement to Expedited Processing*

58.    Shorelight sought expedited processing of the DOS FOIA requests pursuant to 5 U.S.C § 552(a)(6)(E)(i)(I), as implemented by 22 C.F.R. § 171.11(f)(2) and (3). Expedited processing shall be provided "in cases in which the person requesting the records demonstrates a compelling need . . . ." 5 U.S.C. § 552(a)(6)(E)(i)(I). To be considered  a "compelling  need," the requestor must demonstrate one of the following situations exists: (1) an "imminent threat to the life or physical safety of an individual"; (2) the information requested is "urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity"; or (3) nondisclosure of the requested information would "impair substantial due process rights or harm substantial humanitarian interests." 5  U.S.C.

§ 552(a)(6)(E)(v)(II); 22 C.F.R. 171.11(f).

59.     Shorelight's State Department FOIA request is "made by a person primarily engaged in disseminating information," and there is an "urgency to inform the public concerning actual or alleged Federal Government activity." 5. U.S.C. § 552(a)(6)(E)(v)(II); *see also* 22 C.F.R. § 171.11(f)(2) and (3).

60.     In addition, failure to release the information would impair substantial due process rights or harm substantial humanitarian interests. *See* 22 C.F.R. § 171.11(f)(3).  Shorelight has a substantial due process interest in obtaining this data because Shorelight and its associated universities need to understand the changing landscape of the international student visa adjudication process and to make multi-million dollar decisions about which international students to invest in and recruit from around the world.  This data is critical to preventing public schools funded by U.S. taxpayer dollars from wasting millions of dollars to recruit students from areas where they are statistically less likely to obtain visas and visa appointments.

61.     Further, there is an urgent need to inform the public about the federal government activity that is the subject of Shorelight's DOS FOIA request.  In fact, Shorelight is aware that members of the media have also requested this data.

62.     Shorelight gathers information, exercises editorial discretion in selecting and organizing documents, and distributes the resulting work to members of Congress, members of the media, and public and private universities throughout the United States. Media outlets regularly publish the information  Shorelight provides. These media outlets often ask about whether every student who needs an appointment is able to obtain an appointment. Finally, they also ask about the profile of where foreign students are studying and what they are studying in the United States. As this information is not currently publicly available, it is impossible to answer these questions.

63.    As Shorelight Education attempts to educate U.S. universities and members of Congress about the importance of the student visa system, Congressional members and staff consistently ask about whether the denial rate for student visas is increasing or decreasing. They also ask about whether every student who needs an appointment is able to obtain an appointment. Finally, they also ask about the profile of where foreign students are studying and what they are studying in the United States. As this information is not currently publicly available, it is impossible to answer these questions. As this information is not currently publicly available, it is impossible to answer these questions without the information requested.

64.    The data that Shorelight seeks through the FOIA request is directly related to the integrity and viability of the student visa process—an issue which has been a primary focus of news coverage for the past several years.

65.    The subject of Shorelight's FOIA request also raises questions about the government's integrity that affect public confidence. The Government often responds to media requests regarding reductions in issuances of student visas by citing reasons other than an increased refusal rate as well as requests regarding the profile of where foreign students are studying and what they are studying in the United States. This data is essential to uncovering whether an increased refusal rate or the profile of the student is the main reason for reductions in the numbers of student visa issuances in certain countries.

*Exhaustion of Administrative Remedies*

66.    Shorelight has exhausted its administrative remedies and seeks immediate judicial review. *See* 5 U.S.C. § 552(a)(6)(E)(iii); *See* **Exhibit A** Initial FOIA Request (dated February 12, 2025); **Exhibit B**, Ref: F-2025-09970, Freedom of Information Act Acknowledgement and Response/Denial from State Department (dated March 5, 2025); *see* **Exhibit C,** FOIA Appeal to State Department (dated March 17, 2025); *see* **Exhibit D,** Acknowledgement of appeal for FOIA

case F-2025-09970 (showing a lack of response or change since Plaintiff's March 17, 2025 appeal); *See* **Exhibit E,** Ref: F-2025-24419. FOIA Request for student visa approval rates per country for Fiscal Year 2024 and 2025 (dated August 4, 2025);  *See* **Exhibit G,** FOIA Response, dated August 27, 2025, where the State Department stated that it would not be able to respond within the 20 days provided by the statute; *See* **Exhibit H,** FOIA Appeal to State Department (dated September 11, 2025); *See* **Exhibit I,** Acknowledgement of appeal for FOIA case F-2025-24419 (dated September 15, 2025).

67.     Moreover, Defendant's constructive denial of Plaintiff's Appeals for their expedited FOIA requests constitutes a final determination and Plaintiff is deemed to have exhausted its administrative remedies. 5 U.S.C. § 552(a)(4).

## COUNT I

### Violation of FOIA, 5 U.S.C. § 552
### Agency's Wrongful Refusal to Engage in Expedited Processing of FOIA Request

68.     Shorelight repeats the allegations in the forgoing paragraphs and incorporates them as though fully set forth therein.

69.     Shorelight properly requested records within the possession, custody,  and control of DOS on an expedited basis.

70.     DOS is an agency subject to FOIA and must process FOIA requests on an expedited basis pursuant to the requirements of 5 U.S.C. § 552(a)(6)(E) and 22 C.F.R. § 171.11(f)(2) and (3).

71.     Shorelight has, as a core mission of its business, a practice of disseminating information to the  public, the Congress, the media, universities, and students regarding the student visa process.  There is an urgent need to inform the public about the federal government activity that is the subject of Shorelight's DOS FOIA request, such that expedited processing is  appropriate

under 5 U.S.C. § 552(a)(6)(E)(v)(II) and 22 C.F.R. § 171.11(f)(2) and (3).

72.     Shorelight also has a substantial due process interest in obtaining this data because it and its associated universities need to understand the changing landscape of the international student visa adjudication process and to make multi-million dollar decisions about which international students to invest-in and recruit from around the world.  This data is critical to preventing public schools funded by taxpayer dollars from wasting millions of dollars to recruit students from areas where they are unlikely to obtain visas.  *See* 22 C.F.R. § 171.11(f)(2) and (3).

73.     DOS's refusal to provide expedited processing is counter to FOIA and DOS regulations. *See* 22 C.F.R. § 171.11(f)(2) and (3).

74.     Specifically, DOS's constructive denial of Plaintiff's Appeals through complete inaction is a clear violation of the controlling statutes and regulations, which require the FOIA Appeals Officer to "issue a final written determination, stating the basis for the decision, within twenty (20) working days after receipt of a notice of appeal." *See* 25 C.F.R. §517.8(c); 5 U.S.C. §552(a)(6)(A)(ii).

75.     Accordingly, Plaintiff's appeals were constructively denied as of: (1) For FOIA Case F-2025-09970/A-2025-00108, as of April 14, 2025/August 19, 2025 (20 business days from the July 22 notice); (2) For FOIA case F-2025-24419/A-2025-00467, as of October 9, 2025. *See* 5 U.S.C. § 552(a)(6)(A)(i).

76.     Further, even considering the State Department's March 5, 2025 and August 28, 2025 written denials of the initial FOIA Requests, these initial denials still fail to meet the requirements stipulated under the regulations. *See* 22 C.F.R. § 171.13(f).  Indeed, in their only formal initial denials, the single explanation DOS provided was that each of Plaintiff's requests did not demonstrate "a compelling need" for the expedited processing request, without any

explanation as to why this might be. Accordingly, this denial lacks the "brief statement of *reasons for the denial*" mandated by the regulations as DOS does not address any of Plaintiff's <u>four justifications</u> for expedited processing nor explain why these four points fail to demonstrate a compelling need. *Id.*

77.    Accordingly, as DOS failed to meet its statutory duties, the constructive denials of Plaintiff's expedited processing FOIA requests and complete failure to respond to Plaintiff's Appeals was unlawful under the regulations. *See* 22 C.F.R. § 171.13(d)-(f).

78.    Plaintiff Shorelight is therefore entitled to injunctive relief requiring DOS to grant expedited processing of Shorelight's FOIA requests on an expedited basis.

79.    The records sought by Shorelight's FOIA requests relate to a matter of widespread and exceptional media interest in which there exits possible questions concerning the government's integrity and due process that affect public confidence, such that a compelling need exists and expedited processing is appropriate under and 22 C.F.R. § 171.11(f)(2) and (3).

80.    DOS's failure to actually provide expedited processing under 22 C.F.R. § 171.11(f)(2) and (3) and their failure to provide the required response to Plaintiff's Appeals and explanation for their denial under 22 C.F.R. § 171.13(f) violates FOIA and DOS regulations.

81.    Plaintiff Shorelight is therefore entitled to injunctive relief requiring DOS to grant expedited processing of Shorelight's FOIA requests.

## <u>COUNT II</u>

### <u>Violation of FOIA, 5 U.S.C. § 552</u><br><u>Agency's Failure to Respond to FOIA Request Within 20 Days</u>

82.    Plaintiff repeats and incorporates by reference the foregoing paragraphs as if fully set forth herein.

83.    By failing to response and thus constructively denying Plaintiff's requests to

expedite the processing of the information requested and by failing to provide any reason to support their denial, DOS has violated its statutorily mandated obligations under FOIA, including but not limited to its duties to conduct a reasonable search for responsive records, to take reasonable steps to release all reasonably segregable nonexempt information, and to not withhold responsive records. *See* 5 U.S.C. § 552(a)(6); *see also* 22 C.F.R. § 171.11(f).

84.     Plaintiff is being irreparably harmed by DOS's violation of the FOIA, and Plaintiff will continue to be irreparably harmed unless DOS is compelled to comply with the FOIA.

## **RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court:

(1) order Defendant to grant the expedited processing of Shorelight's FOIA request submitted on February 12, 2025 (i.e. F-2025-09970) and Shorelight's FOIA request submitted on February 12, 2025 (i.e F-2025-24419);

(2) order Defendant to conduct a search for any and all responsive records to Plaintiff's FOIA requests and demonstrate that it employed search methods reasonably likely to lead to discovery of records responsive to Plaintiff's FOIA requests;

(3) order Defendant to produce, by a date certain, any and all nonexempt records responsive to Plaintiff's FOIA requests and a Vaughn index of any responsive records withheld under a claim of exemption;

(4) enjoin Defendant from continuing to withhold any and all nonexempt records responsive to Plaintiff's FOIA requests;

(5) award Plaintiff attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

(6) grant Plaintiff such other relief as the Court deems just and proper.


Dated: October 10, 2025                                    Respectfully submitted,

                                                          /s/ Leon Fresco
                                                          LEON FRESCO
                                                          HOLLAND & KNIGHT LLP
                                                          800 17th Street NW, Suite 1100
                                                          Washington, DC 20006
                                                          Telephone: (202) 469-5129
                                                          Fax: (202) 955-5564
                                                          Email: leon.fresco@hklaw.com